STATE of South Dakota, ex rel Corinne JOHNSON, Jeff Johnson, Elmer Olson and Mary Jane Olson, Plaintiffs and Appellants,

v.

The PUBLIC UTILITIES COMMISSION OF SOUTH DAKOTA: Kenneth Stofferahn, Jeff Solem and Dennis Eisnach, as duly elected members thereof, Defendants and Appellees,

and

Northwestern Bell Telephone Company, a foreign corporation, Intervenor and Appellee.

Nos. 14908, 14919.

Supreme Court of South Dakota.

Argued Oct. 22, 1985.

Decided Jan. 22, 1986.

George A. Bangs of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, and Charles Rick Johnson of Johnson, Eklund & Davis, Gregory, for plaintiffs and appellants.

Mary L. Vanderpan, Asst. Atty. Gen., Pierre, for defendants and appellees; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

James E. McMahon of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for intervenor and appellee.

HERTZ, Acting Justice.

Appellants appeal from the trial court's denial of a writ of certiorari in which they contended that the Public Utilities Commission (P.U.C.), appellee, exceeded its jurisdiction by entering into a settlement agreement with Northwestern Bell Telephone Company (Northwestern Bell), appellee-intervenor. Additionally, the P.U.C. has filed a notice of review from the trial court's final order which denied it recovery of costs. We affirm in all respects.

Commencing in the early 1970's and prior to November 17, 1980, Northwestern Bell Telephone Company sold decorator telephone housings to between 7,800 and 15,000 South Dakota customers. Most of the people who purchased such telephones were unaware that Northwestern Bell, through tariffs filed with the Public Utilities Commission, retained title to all of the working parts of said telephones. Similarly unknown to these customers, was the fact that Northwestern Bell charged them rentals on such inner working parts. On December 31, 1983, the American Telephone & Telegraph Company ("AT & T") monopoly was broken up by federal court order and title to the inner workings of the telephones passed to another of its subsidiaries, AT & T Information Systems ("AT & TIS"). AT & TIS billed the owners of the decorator housings for lease payments on the inner workings of the telephones. Shortly thereafter, the P.U.C. received between 400 and 500 complaints from customers who were disputing this practice. In response to these complaints, the P.U.C.

launched an investigation into the matter on April 4, 1984.

On August 17, 1984, appellants-Johnson brought suit in the Sixth Judicial Circuit. This lawsuit sought class action status and made various allegations against Northwestern Bell and AT & TIS in connection with the sale of decorator telephone housings. The trial court denied class action status, but left appellants-Johnson's claim intact.

Northwestern Bell sought to prohibit the P.U.C. from investigating the telephone shell matter by virtue of its application for a writ of prohibition against the Commission dated October 5, 1984. Pursuant to court order entered October 18, 1984, Northwestern Bell's writ of prohibition was quashed which thereby allowed the P.U.C. to proceed with the investigation.

Appellants-Johnson petitioned to intervene in the P.U.C.'s investigation on December 12, 1984. The Commission denied such petition on January 2, 1985, on the ground that appellants had already commenced an action in circuit court and was thus barred by SDCL 49–3–23 from proceeding in both forums. No appeal was taken from the order denying intervention.

On January 2, 1985, the P.U.C. approved a settlement agreement which its staff negotiated with Northwestern Bell in which Northwestern Bell would offer to pay each South Dakota customer to which it sold a decorator telephone shell the sum of $55.00. Pursuant to this settlement, customers have the option to accept or decline the $55.00 payment from Northwestern Bell. As such, the agreement does not force purchasers to accept the settlement and in no way affects their rights should they choose not to accept the offer. Customers who choose to decline the offer are free to pursue any legal remedies available to them. However, those purchasers accepting the offer thereby waive any further claims they may have against Northwestern Bell, AT & TIS and AT & T iin regard to their decorator telephone shells.

Appellants-Olson moved to intervene in the P.U.C.'s investigation on January 2, 1985. The Commission did not receive this motion until after it had accepted the settlement agreement. Appellants' counsel was advised on January 3, 1985 and again on January 10, 1985, that appellants would be precluded from intervening since the proceedings had been concluded on January 2, 1985 due to the Commission's approval of the settlement. Appellants-Olson did not appeal the P.U.C.'s decision.

On January 18, 1985, appellants filed an application with this court for leave to commence original proceedings in order to prevent the P.U.C., Northwestern Bell and AT & TIS from enforcing the settlement reached between the Commission and Northwestern Bell. Appellants' application was denied by this court on January 23, 1985.

Intervenor-appellee Northwestern Bell moved to intervene in the present case by motion dated January 31, 1985. This motion was granted on February 19, 1985.

On February 7, 1985, appellants obtained a writ of certiorari from the Honorable Robert A. Miller which stayed the P.U.C. from implementing the settlement agreement reached with Northwestern Bell.

On February 12, 1985, appellants-Olson along with Sheila Paschke filed an action against Northwestern Bell and AT & TIS in Pennington County. Analogous to the prior class action filed by appellants-Johnson, this lawsuit made allegations of misconduct in relation to the sale of the decorator phone shells as well as its intent to seek certification as a class. Currently, there has been no motion for class certification filed.

On February 26, 1985, Judge Miller entered an order quashing the writ of certiorari previously granted to appellants after a hearing at which all parties appeared. Thereafter, appellants appealed to this court on March 8, 1985. As such, appellants sought review of Judge Miller's order and also requested this court to suspend all communications from the P.U.C. to consumers regarding the settlement agreement. On March 28, 1985, this court de-

nied the appellants motion for a stay and the Commission's request for an expedited briefing schedule.

On April 1, 1985, the appellants and Sheila Paschke by and through their attorneys filed an action for injunctive relief pursuant to 42 U.S.C.A. 1983 in Federal District Court. In their complaint, the appellants sought to enjoin the P.U.C. and Northwestern Bell from implementing the settlement reached in the controversy over the decorator telephone housings. By order dated May 6, 1985, the Honorable Donald J. Porter dismissed the federal court action.

Appellants bring this action by writ of certiorari. They claim that the P.U.C. has operated beyond the scope of its jurisdiction by entering into the settlement agreement with Northwestern Bell despite the fact that the Commission had no authority to settle this claim. Appellants argue that under the Commission's statutory and regulatory laws, any action undertaken by the P.U.C. on behalf of a complainant must be agreed to by the complainant.

The P.U.C. and Northwestern Bell claim that the appellants failed to properly present their claims prior to the negotiation of the settlement. Additionally, they argue that the extraordinary remedy of certiorari is inappropriate in this action given the fact that other legal remedies existed for appellants to pursue.

The issues raised by this appeal will be separately treated under appropriate headings.

### I.

WHETHER THE P.U.C. HAD JURISDICTION TO ENTER ITS ORDER APPROVING THE SETTLEMENT AGREEMENT BETWEEN NORTHWESTERN BELL AND THE STAFF OF THE P.U.C.?

Appellants are not disputing the fact that the P.U.C. had jurisdiction over matters concerning the sale of decorator telephone housings by Northwestern Bell to citizens of this state pursuant to General Tariff 36. Rather appellants contend that the P.U.C.

has exceeded its statutory powers and acted in excess of its lawful jurisdiction by settling the appellants' claims in class action manner without appellants' approval.

Conversely, the P.U.C. states that it did not treat this matter as a class action case. The Commission argues that it did nothing more than agree that Northwestern Bell could make the $55.00 offer to purchasers of the telephone shells. Inasmuch as the P.U.C. did not "settle" the rights of these purchasers, the Commission established a procedure by which each customer could be contacted and given the opportunity to accept or reject the offer. Therefore, the settlement offer as approved by the P.U.C. was binding only upon those shell telephone consumers who chose to accept the offer. The consumers who elected to reject the offer were free to pursue other remedies at their disposal.

Thus, the P.U.C. asserts that the settlement agreement in which the telephone shell purchasers had the option to accept or reject the $55.00 offer is unlike a class action. Given that the agreement made between the Commission and Northwestern Bell binds only those people who choose to accept the offer, it follows that those purchasers who rejected it as well as the many unidentifiable purchasers who failed to receive notice, are not bound by the settlement and agreement, nor have their rights been affected in any way.

■ The trial court held that the P.U.C. had the authority to investigate the telephone shell matter which resulted from the 400 complaints it received from dissatisfied purchasers. The P.U.C. commenced its investigation into the sale of shell telephones pursuant to General Tariff 36 by virtue of SDCL ch. 49–13 which enables the Commission to investigate complaints against common carriers. The Commission initiated an attempt to resolve the conflict with Northwestern Bell in accordance with SDCL 49–13–1. When these attempts failed, it instituted an investigation in compliance with 49–13–4. As required by SDCL 49–13–6, the P.U.C. docketed this proceeding as Docket F–3475. Thus, we

agree with the trial court's ruling that the P.U.C. had jurisdiction over the subject matter of this controversy.

■ Appellants further contend that the P.U.C. did not strictly comply with SDCL 49-13-11, which directs the Commission to make a written report of its findings of fact as well as any recommendations resulting therefrom in connection with an investigation. Additionally, appellants assert that the settlement agreement approved by the P.U.C. did not comport with South Dakota Administrative Rule 20:10:01:18, which conditions approval upon acceptance by the complainant. Both of these contentions on the part of the appellants are rendered moot by virtue of our decision on the certiorari issue. Even if they were not, appellants have failed to demonstrate any prejudice since all of their claims are alive in the trial court.

## II.

WHETHER CERTIORARI IS AN APPROPRIATE REMEDY FOR APPELLANTS IN THIS ACTION?

■ A writ of certiorari is an equitable remedy to be granted only in very limited circumstances. It follows, therefore, that the P.U.C. must have "exceeded [its] jurisdiction and there is no writ of error or appeal, nor any other plain, speedy and adequate remedy" available to the appellants in order for the writ to issue. SDCL 21-31-1. Moreover, it is undisputed that certiorari will not lie to review technical lack of compliance with law or be granted to correct insubstantial errors which are not shown to have resulted in prejudice or to have caused substantial injustice to the appellants herein. (See *Save Centennial Valley Ass'n, Inc. v. Schultz*, 284 N.W.2d 452, 454 (S.D.1979) quoting 14 Am.Jur.2d *Certiorari* § 10, at 786).

We agree with the trial court that all appellants had an adequate remedy at law and, therefore, the writ of certiorari was properly denied.

■ Appellants-Johnson, on December 14, 1984, petitioned to intervene in the P.U.C. proceedings. Since appellants-Johnson had previously filed a separate action in their behalf in Gregory County, Sixth Judicial Circuit (Civ. # 84–54), the Commission properly denied appellants' petition on January 2, 1985, upon the ground that they had elected to pursue their remedy in circuit court as provided in SDCL 49–3–23. This statute affords two avenues of relief for a complainant. The first is to make a complaint to the P.U.C., and the second is to bring suit on his own behalf for the recovery of damages for which any common carrier may be liable under the provisions of Chapters 49–3 to 49–13. The statute specifically declares, however, that "such person shall not have the right to pursue both of such remedies at the same time." Beyond the civil action pending by appellants-Johnson in Gregory County, they also had the right of appeal from the P.U.C. order denying them intervention, which right appellants failed to pursue. The denial of the writ of certiorari requested by appellants-Johnson was clearly proper under this record.

On January 2, 1985, appellants-Olson mailed to P.U.C. a petition to intervene. It was on this very day that the P.U.C. had approved its settlement agreement with Northwestern Bell. P.U.C. received the petition on January 3, 1985. Since the settlement agreement had already been finalized the day before, the P.U.C. denied appellant-Olson's petition for failure to timely file the petition. No formal order denying intervention was filed by the P.U.C. as in the case of appellants-Johnson, however, appellants-Olson were notified of the petition denial by letter from a member of the P.U.C. staff.

Appellants-Olson did not appeal from the denial of the petition claiming there was nothing to appeal from since no formal denial order had ever been entered by P.U.C.

In accordance with SDCL 49–1–19, "[a]ll appeals from any determination, decision or order of the public utilities commission shall be conducted in the manner prescribed by chapter 1–2[6]" which sets forth

administrative procedure and rules. SDCL 1–26–30 provides in pertinent part:

A person who has exhausted all administrative remedies available within any agency or a party who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter. . . . This section does not limit utilization of or the scope of judicial review available under other means of review, redress, or relief, when provided by law. A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

Consonant with SDCL 1–26–30.2, "[a]n appeal shall be allowed in the circuit court to any party in a contested case from a final decision, ruling or action of an agency." An aggrieved party may obtain a review of any final judgment of the circuit court under chapter 1–26 by appeal to the Supreme Court. SDCL 1–26–37.

█ This court has relied on the definition of "aggrieved party" set forth in *Barnum v. Ewing,* 53 S.D. 47, 53, 220 N.W. 135, 138 (1928), which includes those persons who can "affirmatively show that they are aggrieved in the sense that by the decision of the board they suffer the denial of some claim of right, either of person or property[.]" In *Application of Northern States Power Company,* 328 N.W.2d 852, 855 (S.D.1983), the *Barnum* definition was utilized to determine who were aggrieved parties for purposes of appeal under SDCL 1–26–30.

█ In the case at bar, after the P.U.C. denied the appellants' petition to intervene, they became aggrieved parties within the meaning provided in *Barnum, supra.* As such, they could have appealed the Commission's decision pursuant to SDCL ch. 1–26 which prescribes a speedy and adequate remedy for appellate review. The appellants' own failure to appeal to the circuit court, therefore, precludes them from now obtaining the extraordinary remedy of certiorari.

Analogous to the instant case, is this court's decision in *Walker v. Bd. of County Com'rs of Brule,* 337 N.W.2d 807 (S.D. 1983). In *Walker,* the Brule County Commissioners terminated Walker's employment as Brule County Jailer. Walker responded by the application of a writ of certiorari to the circuit court which was temporarily granted. However, an order quashing the writ was subsequently granted from which order Walker appealed. This court held that Walker had a right of appeal from the decision of the County Commissioners which he forfeited. The court continued in pertinent part:

Commissioners had adopted a resolution terminating Walker's job. Walker was duly served with notice of this action of Commissioners. Walker's plain, speedy and adequate remedy at that time was to appeal that action to the circuit court[.]

*Id.* at 808.

Applying the *Walker* rationale to the case at bar, the appellants had the right of appeal from the P.U.C.'s denial of their petition to intervene pursuant to SDCL 1–26–30 and SDCL 1–26–30.2. We agree, therefore, with the trial court's ruling that the appellants' failure to pursue their remedy at law bars granting the writ of certiorari.

The trial court likewise found cogent the appellants' failure to appeal the P.U.C.'s approval of the settlement agreement to the circuit court. As set forth above, the Commission entered into an order approving the settlement with Northwestern Bell on January 2, 1985. As the appellants were aggrieved parties under SDCL 1–26, any one of them could have appealed the Commission's order approving the settlement as provided in SDCL 1–26–30. Had the appellants availed themselves of this right to appeal, this action would have also triggered an administrative review by the circuit court.

Furthermore, appellants-Olson along with Sheila Paschke on their own behalf and on behalf of all others similarly situated, have presently pending a suit against Northwestern Bell Telephone Company and

AT & T Information Systems in Pennington County of the Seventh Judicial Circuit. Appellants-Olson having elected under SDCL 49–3–23 to pursue their damage claim in the trial court, clearly have an adequate remedy at law and the writ of certiorari was properly denied as to them as well.

At this juncture, it is appropriate to note that all appellants contend the action by the P.U.C. violated their class action status. As a matter of fact, the P.U.C. did not reach the settlement with Northwestern Bell based on class action status of any of the complainants. In appellants-Johnson's case in Gregory County, the trial court has entered an order denying class action status in that case. In appellants-Olson's case in Pennington County, the trial court has yet to rule on the class action status of that case. This being so, appellants' class action argument is not pertinent to our discussion here.

We conclude, therefore, that the P.U.C. did not do some act prohibited by law or neglect to do some act required by law which resulted in substantial injustice to any of the appellants.

The appellants herein have all refused the offer of $55.00 pursuant to the P.U.C.-Northwestern Bell agreement. This right of refusal was clearly afforded to each of them under the settlement agreement. Appellants have chosen instead, and in accord with SDCL 49–3–23, to commence actions in circuit court against Northwestern Bell and AT & TIS. Therefore, the trial court was correct in finding that appellants have shown no substantial injustice or prejudice, since they are not bound by the settlement and are pursing actions for damages in circuit court. Accordingly, we affirm the trial court's decision to deny the appellants the extraordinary remedy of certiorari. See *Save Centennial Valley Association, Inc. v. Schultz, supra.*

We affirm the trial court.

FOSHEIM, C.J., HENDERSON, J., and DOBBERPUHL and BERNDT, Circuit Judges, concur.

DOBBERPUHL, Circuit Judge, sitting for MORGAN, J., disqualified.

BERNDT, Circuit Judge, sitting for WUEST, J., disqualified.